**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1500**

PAULA FELTON-MILLER,

           Plaintiff - Appellant,

     v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

           Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern.   Louise W. Flanagan, Chief District Judge.  (2:10-cv-00005-FL)

Submitted:  December 1, 2011        Decided:  December 21, 2011

Before GREGORY, DAVIS, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

David J. Cortes, ROBERTI, WITTENBERG, LAUFFER AND WICKER, Durham, North Carolina, for Appellant.  Thomas G. Walker, United States Attorney, Amy C. Rigney, Special Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Paula Felton-Miller appeals the district court's order affirming the Commissioner of Social Security's denial of her application for disability insurance benefits and supplemental security income. We must uphold the decision to deny benefits if the decision is supported by substantial evidence and the correct law was applied. 42 U.S.C. § 405(g) (2006); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 653 (internal quotation marks omitted). This court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the Commissioner's decision. Id.

Felton-Miller "bears the burden of proving that [s]he is disabled within the meaning of the Social Security Act." English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) (2006)). The Commissioner uses a five-step process to evaluate a disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). Pursuant to this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability;

2

(2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform any other work in the national economy. Id. The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Felton-Miller contends that the ALJ did not properly analyze her subjective complaints of pain. Relying on our decision in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), she argues that a claimant's statements regarding the severity and limiting effects of pain are entitled to a presumption of credibility once the claimant has produced medical evidence demonstrating the existence of an impairment which could reasonably be expected to produce the pain alleged.

"[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. First, the claimant must produce "objective medical evidence showing the existence of a medical impairment[] . . . *which could reasonably be expected to produce the pain . . . alleged.*" Id.; 20 C.F.R. §§ 404.1529(a), 416.929(a)

3

(2011). Second, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Craig, 76 F.3d at 595. The second step is analyzed using statements from treating and nontreating sources and from the claimant. 20 C.F.R. §§ 404.1529(a), 416.929(a). Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant. See Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *5-*8.

Craig lends no support to Felton-Miller's position.[1] Craig notes that step one of the pain analysis is focused solely "on establishing a determinable underlying impairment — a statutory requirement for entitlement to benefits." Craig, 76 F.3d at 594. Craig explains that, after the claimant crosses this threshold, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work,

---

[1] Felton-Miller identifies a host of other cases that she contends support the existence of a "great weight rule." These cases recognize that subjective evidence may be entitled to great weight, but the cases do not rely on the finding at step one of the pain analysis. Rather, great weight is afforded to subjective evidence when it is either uncontradicted or supported by substantial evidence. See, e.g., Combs v. Weinberger, 501 F.2d 1361, 1362-63 (4th Cir. 1974) ("[W]e have held that subjective evidence is entitled to great weight, especially where such evidence is uncontradicted in the record.") (internal quotation marks omitted).

must be evaluated." Id. at 595. The claimant's own statements regarding her pain are not afforded any presumption; rather, "[u]nder the regulations, . . . evaluation [of the claimant's pain] must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings." Id. (internal quotation marks omitted).

Felton-Miller contends the ALJ's reasons for discrediting her subjective complaints at step two of the pain analysis were inaccurate and insubstantial. First, the ALJ found that Felton-Miller's sarcoidosis has been well controlled with various medication regimens. Felton-Miller asserts that this statement is at odds with a treatment note that her symptoms were not well controlled with prednisone and subsequent notes that she stopped taking Plaquenil and methotrexate. However, we conclude that substantial evidence supports the ALJ's conclusion because the record shows that, although Felton-Miller's medication occasionally required adjustment, her symptoms were successfully controlled at various times.

Second, Felton-Miller contends that the ALJ's reliance on the absence of clinical signs of persistent joint inflammation, joint deformity, or limitation of joint motion is erroneous. She argues that sarcoidosis is a disease that, by definition, primarily involves a kind of inflammation, that she

5

at times presented and was assessed with joint problems, and that she was treated with anti-inflammatory drugs. However, medical conditions alone do not entitle a claimant to disability benefits; "[t]here must be a showing of related functional loss." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Accordingly, Felton-Miller's sarcoidosis diagnosis, without more, does not establish that she suffers from any particular symptoms or limitations. Here, the ALJ acknowledged Felton-Miller's treatment for joint, back, and muscle problems. However, the ALJ also determined that these problems were not persistent. Our review of the record leads us to conclude that the ALJ's finding is supported by substantial evidence.

Third, Felton-Miller asserts that the ALJ erroneously relied on an irrelevant finding that her carpal tunnel syndrome was mild. We conclude that no such error occurred. In evaluating symptoms, including pain, an ALJ is to "consider all of the evidence presented." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011). Consideration of the limiting effects of Felton-Miller's carpal tunnel syndrome led the ALJ to a residual functional capacity ("RFC") assessment precluding her from performing tasks requiring the constant use of her hands.

Fourth, the ALJ concluded that Felton-Miller's degenerative disc disease was mild. Felton-Miller asserts that this finding is not supported by substantial evidence because

6

treatment notes indicate that she has a history of severe degenerative disc and joint disease. However, the ALJ reviewed the records Felton-Miller cites in addition to evidence that Felton-Miller enjoyed full strength, had no neurological deficits indicating nerve root compression, and had normal motor nerve function with no evidence of cervical myopathy. Additionally, contrary to Felton-Miller's assertions, the ALJ's finding that Felton-Miller's degenerative disc disorder was a severe impairment at step two of the sequential evaluation does not contradict the ALJ's conclusion that the disorder's impact on her functioning was mild. Step two of the sequential evaluation is a threshold question with a de minimis severity requirement. See Bowen, 482 U.S. at 153-54; SSR 88-3c, 1988 WL 236022.

Fifth, Felton-Miller argues that the ALJ erroneously rejected her pain testimony on the ground that she has not required aggressive measures for pain relief such as ongoing use of steroid medication. Felton-Miller has waived review of this issue by failing to raise it below. See Pleasant Valley Hosp. v. Shalala, 32 F.3d 67, 70 (4th Cir. 1994) (finding that appellant's failure to raise issue during administrative hearing and before district court operates as waiver of appellate review).

Turning to Felton-Miller's argument that the ALJ's RFC finding is not supported by substantial evidence because the ALJ is a layman and did not obtain an expert medical opinion, we conclude this argument is without merit.[2] "[R]esidual functional capacity is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2011). It is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record. See 20 C.F.R. §§ 404.1546(c), 416.946(c) (2011) (assigning responsibility of RFC assessment at hearing level to ALJ); SSR 96-8p (identifying RFC finding as administrative assessment and outlining criteria to be used). The ALJ was not required to obtain an expert medical opinion as to Felton-Miller's RFC. The ALJ properly based his RFC finding on Felton-Miller's subjective complaints, the objective medical evidence, and the opinions of treating, examining, and nonexamining physicians.

---

[2] Felton-Miller asserts that, because "bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record." Gordils v. Sec. of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990). Here, however, the nerve conduction test Felton-Miller identifies as too technical for a layman to interpret was interpreted in functional terms by the examining physician. Based on the test results, the doctor concluded that Felton-Miller had evidence of mild carpal tunnel syndrome but no other disorders.

8

Felton-Miller also argues that the ALJ did not make a valid mental RFC assessment because he did not apply the proper standards. In evaluating mental impairments, the ALJ employs a specific technique that considers four functional areas essential to the ability to work: activities of daily living; ability to maintain social functioning; concentration, persistence, and pace in performing activities; and deterioration or decompensation in work or work-like settings (Psychiatric Review Technique "PRT" findings). 20 C.F.R. §§ 404.1520a, 416.920a (2011). The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) (2011).

The ALJ concluded that Felton-Miller's depressive disorder was a severe impairment at step two of the sequential process without discussion of the special technique. At step three, the ALJ listed the four functional areas and analyzed the impact of Felton-Miller's depressive disorder on these areas. The decision discusses the medical records relevant to Felton-Miller's treatment for depression in assessing her mental RFC. We conclude that the ALJ assessed Felton-Miller's mental RFC in accordance with regulations.

Based on the foregoing, we find that substantial evidence supports the agency decision, and we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>